**No. 25-12945**

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

B.M.S., A MINOR CHILD, THROUGH HIS MOTHER AND NEXT FRIEND, MICHELLE SAENZ,

*Plaintiff-Appellant,*

v.

CIRCUIT COURT JUDGE, ELEVENTH JUDICIAL CIRCUIT OF FLORIDA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Florida, No. 1:24-cv-24600 (Martinez, J.)

# PLAINTIFF-APPELLANT'S OPENING BRIEF

Reid Levin
**REID LEVIN, PLLC**
P.O. Box 880682
Boca Raton, Florida 33488
(561) 866-6089
reid@reidlevinpllc.com

***Attorney for Plaintiff-Appellant***

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Civil Procedure 26.1, Plaintiff-Appellant, an individual person, hereby states that no publicly traded company or corporation has an interest in the outcome of this case or appeal. Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Plaintiff-Appellant certifies that the following list of persons, associated persons, and entities may have a financial interest in the outcome of the case:

1. Burianek, Veronica, *Counsel for Defendant-Appellee*
2. Diaz, Honorable Veronica A., *Defendant-Appellee and Circuit Court Judge for the Eleventh Judicial Circuit of Florida*
3. Eleventh Judicial Circuit of Florida, *Judicial Circuit in which the underlying state court proceeding is pending*
4. Florida Attorney General's Office, *Counsel for Defendant-Appellee*
5. Grass, Katuscha M., *Guardian* ad litem *in the underlying state court proceeding*
6. Katuscha M. Grass, P.A., *Guardian* ad litem *in the underlying state court proceeding*
7. Koltun & Lazar, P.A., *Counsel for Father of Plaintiff-Appellant in the underlying state court proceeding*

8. Laleh-Abramowitz, Jessica T., *Counsel for Father of Plaintiff-Appellant in the underlying state court proceeding*

9. Law Offices of Diana M. Trainor, LLC, *Counsel for Guardian* ad litem *in the underlying state court proceeding*

10. Lazar, Scott A., *Counsel for Father of Plaintiff-Appellant in the underlying state court proceeding*

11. Levin, Reid E., *Counsel for Plaintiff-Appellant*

12. Marcus Neiman Rashbaum & Pineiro LLP, *Counsel for Father of Plaintiff-Appellant and Proposed Intervenor-Defendant in proceedings below*

13. Margules Law Group, P.A., *Counsel for Mother of Plaintiff-Appellant in the underlying state court proceeding*

14. Margules, Leon R., *Counsel for Mother of Plaintiff-Appellant in the underlying state court proceeding*

15. Margules, Zachary D., *Counsel for Mother of Plaintiff-Appellant in the underlying state court proceeding*

16. Martinez, Hon. Jose E., *U.S. District Court Judge for the Southern District of Florida and District Court Judge in proceedings below*

17. Meyers, Kathryn, *Counsel for Father of Plaintiff-Appellant and Proposed Intervenor-Defendant in proceedings below*

18. Munkittrick, Thomas, *Counsel for Defendant-Appellee*

19. Nedelman Legal Group, PLLC, *Counsel for Mother of Plaintiff-Appellant in the underlying state court proceeding*
20. Nedelman, Michael A., *Counsel for Mother of Plaintiff-Appellant in the underlying state court proceeding*
21. Pineiro, Michael A., *Counsel for Father of Plaintiff-Appellant and Proposed Intervenor-Defendant in proceedings below*
22. Quijano, Devon M., *Counsel for Guardian* ad litem *in the underlying state court proceeding*
23. Reid Levin, PLLC, *Counsel for Plaintiff-Appellant*
24. Rodriguez, Leylany E., *Counsel for Plaintiff-Appellant*
25. Saenz, Michelle, *Mother of Plaintiff-Appellant, through whom Plaintiff-Appellant brings suit*
26. S., B. M., *Plaintiff-Appellant*
27. Sanchez III, Roberto, *Father of Plaintiff-Appellant and Proposed Intervenor-Defendant in proceedings below*
28. Trainor, Diane M., *Counsel for Guardian* ad litem *in the underlying state court proceeding*
29. All other persons and entities identified in Defendant's Certificate of Interested Persons and Corporate Disclosure Statement.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), and 11th Cir. R. 34-3(c), Plaintiff-Appellant respectfully requests oral argument in this matter. This appeal presents important and unsettled questions of first impression in this Circuit, including whether a district court may properly abstain under *Younger v. Harris*, 401 U.S. 37 (1971), when a non-party minor to the state court proceeding challenges, on First and Fourteenth Amendment grounds, a state-court injunction that restrains his right to receive information from his mother. This appeal is also important because it presents a fundamental question regarding the scope of judicial immunity; specifically, whether this Circuit will depart from the prevailing view of virtually every other circuit and extend judicial immunity to bar actions seeking only prospective declaratory relief. Plaintiff-Appellant respectfully submits oral argument would assist this Court in adjudicating these issues and facilitate this Court's consideration of the important legal principles at stake.

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS .......... C-1 of 3

STATEMENT REGARDING ORAL ARGUMENT .......... i

TABLE OF CONTENTS .......... ii

TABLE OF CITATIONS .......... iii

JURISDICTIONAL STATEMENT .......... x

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

I. Proceedings Below .......... 2

II. Statement of the Facts .......... 2

III. Standard of Review .......... 5

SUMMARY OF THE ARGUMENT .......... 6

ARGUMENT .......... 9

I. The District Court Abused Its Discretion by Misapplying Younger Through Its Mischaracterization of the State Court Dissolution of Marriage Action as a Civil Enforcement Proceeding .......... 9

II. Judicial Immunity Does Not Bar Prospective Declaratory Relief Under § 1983 .......... 16

a. Plaintiff-Appellant established a violation .......... 22

b. Plaintiff-Appellant established irreparable injury .......... 24

c. Plaintiff-Appellant established no adequate remedy at law .......... 26

CONCLUSION .......... 28

CERTIFICATE OF COMPLIANCE .......... 29

## TABLE OF CITATIONS

**Cases** **Page(s)**

*31 Foster Child. v. Bush*,
329 F.3d 1255 (11th Cir. 2003) .................... 5

*375 Slane Chapel Road, LLC v. Stone Cnty.*,
53 F.4th 1122 (8th Cir. 2022) .................... 12

*Barnett v. Barnett*,
705 So. 2d 63 (Fla. Dist. Ct. App. 1997) .................... 27

*Barrett v. Walker Cnty. Sch. Dist.*,
872 F.3d 1209 (11th Cir. 2017) .................... 8, 25, 26

*Belevich v. Thomas*,
No. 2:17-CV-01193-AKK, 2018 WL 1244493 (N.D. Ala. Mar. 9, 2018) .......... 12

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) .................... 22

**Bolin v. Story*,
225 F.3d 1234 (11th Cir. 2000) .................... 8, 16, 17, 19, 20, 21, 21

*Brinson v. Providence Cmty. Corr.*,
703 F. App'x 874, 876 (11th Cir. 2017) .................... 19

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .................... 23, 24

*Buckner v. Fam. Servs. of Cent. Fla., Inc.*,
876 So. 2d 1285 (Fla. Dist. Ct. App. 2004) .................... 13

*City of Jacksonville v. Raulerson*,
415 So. 2d 1303 (Fla. Dist. Ct. App. 1982) .................... 13

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .................... 6, 9

*Davis v. Campbell*,
No. 3:13-cv-0693LEK/ATB, 2014 WL 234722 (N.D.N.Y. Jan. 22, 2014) ........ 18

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. Unit B 1981) ............................................................ 25, 28

*Dudley v. McCormick*,
799 So. 2d 436 (Fla. Dist. Ct. App. 2001) ........................................................ 13

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........................................................................................... 26

*Edwards v. CIT Bank, N.A.*,
306 So. 3d 217 (Fla. Dist. Ct. App. 2020) ..................................................... 15, 27

*Elrod v. Burns*,
427 U.S. 347 (1976) ......................................................................................... 24, 25

*Erznoznik v. Jacksonville*,
422 U.S. 205 (1975) ........................................................................................... 23

*Esensoy v. McMillan*, No. 06-12580,
2007 WL 257342 (11th Cir. Jan. 31, 2007) ........................................................ 17

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................................................... 18

*For Your Eyes Alone, Inc. v. City of Columbus*,
281 F.3d 1209 (11th Cir. 2002) ............................................................................ 9

*Ginsberg v. New York*,
390 U.S. 629 (1968) ........................................................................................... 23

*Gonzalez ex rel. Gonzalez v. Reno*,
86 F. Supp. 2d 1167 (S.D. Fla.), *aff'd sum nom.*, 212 F.3d 1338 (11th Cir. 2000)................................................................................................................ 13

*Greening v. Moran*,
953 F.2d 301 (7th Cir. 1992) ..............................................................................16

*Haw. Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984) ....................................................................................6

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ..................................................................................11

*Jackson-Platts v. Gen. Elec. Cap. Corp.*,
727 F.3d 1127 (11th Cir. 2013) ...........................................................6, 15

*Jeremiah M. v. Crum*,
695 F. Supp. 3d 1060 (D. Alaska 2023) ..................................................13

*Johns v. Stewart*,
57 F.3d 1544 (10th Cir. 1995) ................................................................ 18

*Johnson v. McCuskey*,
72 F. App'x 475 (7th Cir. 2003) ............................................................. 17

*Juidice v. Vail*,
430 U.S. 327 (1977) ................................................................................ 11

*Just. Network Inc. v. Craighead Cnty.*,
931 F.3d 753 (8th Cir. 2019) .................................................................. 18

*KH Outdoor, LLC v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) ........................................................ 24, 25

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) .......................................................... 5, 15

*Lawrence v. Kuenhold*,
271 F. App'x 763 (10th Cir. 2008) ......................................................... 18

*LeDuc v. Tilley*,
No. 3:05CV157MRK, 2005 WL 1475334 (D. Conn. June 22, 2005) ................ 18

*Leonard v. Ala. State Board of Pharmacy*,
61 F.4th 902 (11th Cir. 2023) ........................................................ 6, 10, 14

*M.L.B. v. S.L.J.*,
519 U.S. 102 (1996) .............................................................................................. 25

*Mahler v. Jud. Council of Cal.*,
67 Cal. App. 5th 82, 110 (2021) ........................................................................... 17

*Martin v. Automobili Lamborghini Exclusive, Inc.*,
307 F.3d 1332 (11th Cir. 2002) ............................................................................. 5

*Martin v. City of Struthers*,
319 U.S. 141 (1943) .............................................................................................. 22

*Martin v. Eleventh Jud. Cir. of Fla.*,
No. 23-23620-CIV, 2024 WL 4783009 (S.D. Fla. Feb. 22, 2024) ..................... 12

*McGee v. Solic. Gen. of Richmond Cnty.*,
727 F.3d 1322 (11th Cir. 2013) ............................................................................ 18

**Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ............................................................................ 7, 10, 11, 15

*Moore v. Sims*,
442 U.S. 415 (1979) ..................................................................................... 11, 14

*Moore v. Urquhart*,
899 F.3d 1094 (9th Cir. 2018) .............................................................................. 17

**New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) ........................................................................................ 9, 10

*Newman v. Alabama*,
683 F.2d 1312 (11th Cir. 1982) ............................................................................ 21

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012) .................................................................................... 6

*Nivens v. Gilchrist*,
444 F.3d 237 (4th Cir. 2006) ................................................................................ 16

*Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
896 F.2d 1283 (11th Cir. 1990) .......... 24, 26, 28

*Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*,
477 U.S. 619 (1986) .......... 14

*Patrick v. Floyd Med. Ctr.*,
201 F.3d 1313 (11th Cir. 2000) .......... 22

*Prince v. Massachusetts*,
321 U.S. 158 (1944) .......... 23

*Portfolio Invs, Corp. v. Deutsche Bank Nat'l Trust Co.*,
81 So. 3d 534, 536 (Fla. Dist. Ct. App. 2012) .......... 15, 27

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) .......... 18

*Rosen v. Cascade Intern., Inc.*,
21 F.3d 1520 (11th Cir. 1994) .......... 26

*Roshan v. McCauley*,
130 F.4th 780 (9th Cir. 2025) .......... 11

*Santosky v. Kramer*,
455 U.S. 745 (1982) .......... 25

*Scott v. Hayes*,
719 F.2d 1562 (11th Cir. 1983) .......... 19

*Severin v. Par. of Jefferson*,
357 F. App'x 601 (5th Cir. 2009) .......... 17

*Sibley v. Lando*,
437 F.3d 1067 (11th Cir. 2005) .......... 19, 20, 21

*Sibley v. U.S. Sup. Ct.*,
136 F. App'x. 252 (11th Cir. 2005) .......... 6

*Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*,
623 F.3d 1371 (11th Cir. 2010) .......... 24

**Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) .......... 7, 9, 10, 11, 12, 13, 14

*Stanley v. Georgia*,
394 U.S. 557 (1969) .......... 22

*Stein v. Reynolds Secs., Inc.*,
667 F.2d 33 (11th Cir. 1982) .......... 25

*Tokyo Gwinnett, LLC v. Gwinnett Cnty.*,
940 F.3d 1254 (11th Cir. 2019) .......... 6, 10

*Woodard v. Fanboy, L.L.C.*,
298 F.3d 1261 (11th Cir. 2002) .......... 5

**Younger v. Harris*,
401 U.S. 37 (1971) .......... i, 1, 5–11, 13–16

**Constitutional Provisions**

U.S. Const. Amendment I .......... i, x, 1, 5–7, 15, 22–26

U.S. Const. Amendment XIV .......... i, x, 1, 7, 15, 24, 26

**Statutes**

28 U.S.C. §1291 .......... x

28 U.S.C. §1331 .......... x

28 U.S.C. §1343(a)(3) .......... x

42 U.S.C. § 1983 .......... x, 1, 6, 8, 16, 17, 19, 20, 22, 24

Fla. Stat. ch. 61 .......... 11

Fla. Stat. § 61.011 ........................................ 25

**Rules**

FRAP 4(a)(1)(A) ........................................ x

FRAP 32(a)(5)(A) ........................................ 30

FRAP32(a)(6) ........................................ 30

FRAP 32(a)(7)(B) ........................................ 30

FRAP 32(f) ........................................ 30

FRAP 34(a) ........................................ i

FRCP 17(a) ........................................ 12

FRCP P. 57 ........................................ 21, 22

11th Cir. R. 32-4 ........................................ 30

11th Cir. R. 34-3(c) ........................................ i

**Other Authorities**

BENJAMIN FRANKLIN, POOR RICHARD'S ALMANAC (January 1748) ........................................ 28

JOHN BARTLETT, FAMILIAR QUOTATIONS
(Emily Morison Beck ed., 15th ed. 1980) ........................................ 28

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because this matter arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

The district court entered final judgment on July 29, 2025, and Plaintiff-Appellant filed the Notice of Appeal on August 25, 2025. This Court has appellate jurisdiction under 28 U.S.C. §1291. Plaintiff-Appellant's appeal is timely under Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in abstaining under the *Younger* doctrine where the underlying state court divorce and custody proceedings do not fall within the narrow categories of cases to which *Younger* applies, and where Plaintiff—a non-party minor child to the divorce action—asserted an independent First and Fourteenth Amendment right not adequately addressed in the state forum.

2. Whether the district court erred in holding that judicial immunity bars actions seeking only prospective declaratory relief under 42 U.S.C. § 1983.

## STATEMENT OF THE CASE

### I. Proceedings Below

On November 21, 2024, Plaintiff B.M.S., through his mother and next friend, Michelle Saenz (the "Mother"), filed his Complaint for Prospective Declaratory Relief. Doc. 1-0. On December 16, Defendant filed her Motion to Dismiss with Prejudice and Incorporated Memorandum of Law. Doc. 6. Plaintiff filed his Opposition on December 30. Doc. 10. Defendant did not file a reply.

Thereafter, Defendant filed a Motion for a Protective Order and Motion to Stay Discovery. Doc. 11. On January 15, 2025, B.M.S.'s father, Roberto Sanchez III (the "Father"), filed a Motion to Intervene and a Third Party Motion to Dismiss. Doc. 12-0; Doc. 12-1. Plaintiff followed with his Opposition to Defendant's Motion for Protective Order, Doc. 13, and his Opposition to Non-Party Roberto Sanchez's Motion to Intervene, Doc. 14. The Father filed his reply on February 12, 2025.

On July 29, 2025, the district court granted Defendant's Motion to Dismiss and denied all pending motions as moot. Doc. 24. On August 25, 2025, B.M.S. timely filed his Notice of Appeal. Doc. 25.

### II. Statement of the Facts

On May 17, 2019, the Mother filed a petition against the Father for dissolution of marriage in Florida's Eleventh Judicial Circuit of Florida, captioned *Saenz v. Sanchez*, and bearing case number 2019-DR-011455-FC-04 ("DOM proceeding" or

"state court proceeding"). Doc. 1 at 4–5 ¶¶ 19, 26. Throughout the pendency of the DOM proceeding, both parties enjoyed equal timesharing of the children until a predecessor judge issued three temporary timesharing rulings, including ordering an indefinite suspension of the Mother's timesharing and preventing her from having any contact with any of her children ("Initial No Contact Order"). *Id.* at 6 ¶¶ 27–28. The Mother appealed on grounds that the Initial No Contact Order violated her right to due process. *Id.* at 6 ¶ 30. The appeal was successful; the order was vacated; and the appellate court ordered an expedited hearing. *Id.* at 6 ¶¶ 32–33.

While the appeal was pending, the predecessor judge was disqualified, and the DOM proceeding was transferred to Hon. Diaz. *Id.* at 6 ¶¶ 30–31. In accordance with the appellate mandate, Hon. Diaz conducted a three-day expedited hearing. *Id.* at 7 ¶¶ 34, 36. On May 26, 2023, Hon. Diaz issued her Order on Appellate Court Mandated Hearing ("Second No Contact Order"). Doc. 1-1.

The Second No Contact Order barred the Mother from all contact and communication with B.M.S. *Id.* at 8 ¶ C. Specifically, it ordered: "Wife shall continue to have no contact or communication with the three (3) minor children, either directly or indirectly through third parties . . . ." *Id.*

The Second No Contact Order was not issued in the context of a termination of parental rights proceeding, or a proceeding for protection against domestic violence; rather, the order was issued pursuant to the chapter 61 proceedings

governing dissolutions of marriage. Doc. 1 at 8 ¶ 39; Doc. 1-1 at 3 ¶ 11. In fact, the Second No Contact Order made clear: "The Court did not hear anything about child abuse, child abandonment or child neglect." Doc. 1 at 8 ¶ 40 (quoting Doc. 1-1 at 6 ¶ 24). The Mother unsuccessfully appealed the Second No Contact Order. Doc. 1 at 8 ¶ 45.

Concurrently, the Mother filed an Emergency Motion to Appoint Attorney ad Litem for Minor Son ("Motion to Appoint Attorney ad litem"). *Id.* at 9 ¶ 47. The court denied the motion; the Mother appealed; and the appellate court directed the court to "convene a hearing on the motion." *Id.* at 9 ¶ 49. After a hearing, the court again denied the Mother's Motion to Appoint an Attorney ad litem, ruling "it is not in B.M.S.' best interest to be involved in this litigation." *Id.* at 9 ¶ 50.

Despite this denial, Hon. Diaz agreed to speak to B.M.S. *Id.* at 9 ¶ 51. The transcript of Hon. Diaz's conversation with B.M.S. revealed B.M.S.'s desire to be with and communicate with his Mother. *Id.* at 10 ¶¶ 53–54; Doc. 1-2 at 9:8–16, 13:24, 19:18–20:9, 34:25–35:5. Despite B.M.S.'s desire to communicate with his Mother, Hon. Diaz kept the Second No Contact Order in Place. Doc. 1 at 11 ¶ 55.

On May 10, 2024, the Mother filed her Motion to Dissolve and/or Vacate Injunction ("Motion to Dissolve") and requested a hearing within five days in accordance with Rule 12.605(d), Florida Family Law Rules of Procedure. Doc. 1 at

11 ¶ 56. On May 13, 2024, Hon. Diaz denied the requested hearing. *Id.* at 11 ¶ 57. The DOM proceeding remains ongoing. *Id.* at 5 ¶ 26.

B.M.S. wants nothing more than to communicate with his Mother and for his Mother to communicate with him. *Id.* at 11 ¶ 63. So, too, does his Mother. *Id.* at 11 ¶ 64. Because B.M.S. has no recourse to vindicate his First Amendment right to receive information in the DOM Proceeding, B.M.S., through his Mother, filed suit in the Southern District of Florida. Doc. 1 at 11 ¶ 66.

## III. Standard of Review

A district court's decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), is reviewed for an abuse of discretion. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (quoting *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336 (11th Cir. 2002)). "A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner." *Id.* (citing *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1268 n.14 (11th Cir. 2002)).

Because abstention "is the exception, not the rule," this Court has explained that "even with the deferential standard of review, 'only the clearest of justifications

merits abstention.'" *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266–67 (11th Cir. 2019) (first quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); then quoting *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013)); *accord Leonard v. Alabama State Bd. of Pharmacy*, 61 F.4th 902, 907 (11th Cir. 2023). Said differently, this Court's "review is somewhat rigorous." *Tokyo Gwinnett, LLC*, 940 F.3d at 1267 (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012)). Thus, "where *Younger*'s prerequisites are not satisfied, federal courts must exercise their jurisdiction." *Jackson-Platts*, 727 F.3d at 1140 (citing *Tokyo Gwinnett, LLC*, 940 F.3d at 1266–67); *see also Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984).

A district court's decision to grant a motion to dismiss based on judicial immunity is reviewed *de novo*. *Sibley v. U.S. Sup. Ct.*, 136 F. App'x. 252, 253 (11th Cir. 2005).

## SUMMARY OF THE ARGUMENT

This appeal arises from a first amendment right to receive information case filed under 42 U.S.C. § 1983 that was erroneously dismissed by the district court, leaving a minor child without a forum to vindicate his constitutional rights. Reversal is warranted for two reasons: the district court misapplied *Younger* doctrine and improperly extended judicial immunity beyond its proper bounds.

*First*, the district court abused its discretion in abstaining under *Younger* by mischaracterizing the state court dissolution of marriage proceeding as a "civil enforcement" action. Yet dissolution proceedings—equitable actions between private individuals—bear none of the hallmarks of quasi-criminal civil enforcement actions. The dissolution action in this case is no different. It was not initiated by the State; it was not undertaken to sanction wrongful conduct; and it did not involve investigations, formal charges, or any other similarities to criminal actions. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013).

*Younger* abstention is the narrow "exception, not the rule," and by extending *Younger* in this manner, the district court ignored the Supreme Court's clear instruction that abstention may not be invoked "simply because a pending state-court proceeding involves the same subject matter." *Id.* at 72, 82.

Moreover, *Younger* abstention was especially improper under the third *Middlesex* factor because B.M.S.—a non-party minor—asserted an independent federal claim that cannot be raised or remedied in the ongoing state proceeding. Not only was B.M.S. expressly denied the appointment of an attorney *ad litem* to assert his constitutional interests at trial, but as a non-party to the proceeding, he lacks standing to appeal. Abstention therefore deprived B.M.S. of any forum for vindicating his First and Fourteenth Amendment rights.

*Second*, the district court erred as a matter of law in holding that judicial immunity barred B.M.S.'s claim for prospective declaratory relief. The 1996 amendment to § 1983 limits only injunctive relief against judicial officers—not declaratory relief—and nothing in the statute or this Court's precedent extends absolute judicial immunity to prospective declaratory claims. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).

Nevertheless, the district court concluded that B.M.S. failed to satisfy the necessary prerequisites for declaratory relief. That conclusion was erroneous for two independent reasons. First, the district court misstated the governing legal standard by imposing requirements not found into § 1983 or this Court's precedent. Second, the court incorrectly held that B.M.S. had an adequate remedy at law. Yet the ongoing enforcement of the no-contact order operates as a prior restraint, inflicting irreparable harm that cannot be compensated by monetary damages. *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

In short, the district court both abstained where *Younger* does not apply and extended judicial immunity beyond its statutory and doctrinal limits. The district court's order should therefore be reversed, and the case remanded for adjudication on the merits.

## ARGUMENT

### I. The District Court Abused Its Discretion by Misapplying *Younger* Through Its Mischaracterization of the State Court Dissolution of Marriage Action as a Civil Enforcement Proceeding.

"The Supreme Court has said that federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them." *31 Foster Child.*, 329 F.3d at 1274 (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817) (alteration adopted). "Attentive to the principles of equity, comity, and federalism, the Supreme Court in *Younger* recognized an exception to this unflagging obligation." *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1216 (11th Cir. 2002).

In *Younger v. Harris*, 401 U.S. 37 (1971), the Court "held that absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (*NOPSI*). Since then, *Younger* has been extended "to particular state civil proceedings that are akin to criminal prosecutions . . . or that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (citations omitted).

However, "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Id.* at 72 (citing *NOPSI*, 491 U.S. at 373). In that regard, the Supreme Court has cautioned against sweeping deference to state proceedings, explaining that "a broad abstention requirement would make a

mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368; *accord Sprint Commc'ns, Inc.*, 571 U.S. at 73.

Accordingly, the Supreme Court has made clear that "*Younger* abstention applies only in three 'exceptional circumstances': (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Tokyo Gwinnett, LLC*, 940 F.3d at 1267 (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 78).

If (and only if) a district court finds one of the three exceptional circumstances present, the court must next consider the three *Middlesex County Ethics Committee v. Garden State Bar Ass'n ("Middlesex")*, 457 U.S. 423 (1982), factors to determine whether abstention is appropriate. *Tokyo Gwinnett, LLC*, 940 F.3d at 1268. The *Middlesex* factors ask: "First, is the state proceeding 'ongoing' at the same time as the federal one? Second, does the state proceeding implicate an 'important state interest'? And third, does the state proceeding provide an 'adequate opportunity' to raise the federal claim?" *Leonard*, 61 F.4th at 908 (citing *Tokyo Gwinnett, LLC*, 940 F.3d at 1268; *Middlesex*, 457 U.S. at 432).

In its Order Granting Defendant's Motion to Dismiss, the district court held "the *Younger* abstention doctrine applies, permitting the Court to defer to the state

court system." Doc. 24, at 4. In so doing, the district court likened the case to *Moore v. Sims*, 442 U.S. 415 (1979), and found that the state court dissolution of marriage proceeding "qualifies as a civil enforcement proceeding." Doc. 24, at 5. That comparison is misplaced. Dissolution of marriage proceedings bear none of the hallmarks of civil enforcement proceedings, and by applying *Younger* in this unreasonable and incorrect manner, the district court abused its discretion and should be reversed.

Civil enforcement proceedings are proceedings "'akin to a criminal prosecution' in 'important respects.'" *Sprint Commc'ns, Inc.,* 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). The Supreme Court has repeatedly referred to these actions as "quasi-criminal" in nature. *See id.* at 81 (calling the context of the state proceeding "quasi-criminal"); *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (referring to the state court action in *Huffman* as a "quasi-criminal proceeding"); *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 438 (Brennan, J., concurring in judgment) (noting the "quasi-criminal nature of bar disciplinary proceedings"); *see also Roshan v. McCauley*, 130 F.4th 780, 783 (9th Cir. 2025) (utilizing the term "quasi-criminal" to describe civil enforcement proceedings). "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint Commc'ns, Inc.*, 571 U.S. at 79. "In cases of this genre, a state actor is routinely a

party to the state proceeding and often initiates the action." *Id.* "Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* at 79–80.

Thus, to answer whether a state proceeding falls within the "civil enforcement" or "quasi-criminal" proceeding category, "the Court in *Sprint* asked: (1) was the action commenced by the State in its sovereign capacity? (2) Was the proceeding initiated to sanction the federal plaintiff for some wrongful act? (3) Are there other similarities to criminal actions, such as a preliminary investigation culminating in the filing of formal charges?" *375 Slane Chapel Rd., LLC v. Stone Cnty.*, 53 F.4th 1122, 1128 (8th Cir. 2022) (citing *Sprint Commc'ns, Inc.*, 571 U.S. at 79–80).

The answers here are *no*, *no*, and *no*. Dissolution of marriage proceedings do not fall under the category of "civil enforcement" or "quasi-criminal" proceedings, and it is not even close. *See id.*; *Martin v. Eleventh Judicial Circuit of Florida*, No. 23-23620-CIV, 2024 WL 4783009, at *6 (S.D. Fla. Feb. 22, 2024) ("Clearly, a divorce proceeding is not a state criminal prosecution or civil enforcement proceeding."); *Belevich v. Thomas*, No. 2:17-CV-01193-AKK, 2018 WL 1244493, at *4 n.3 (N.D. Ala. Mar. 9, 2018) ("A divorce proceeding is clearly neither a criminal action nor a state enforcement proceeding."). Indeed, a dissolution of marriage is an equitable proceeding initiated by private individuals to terminate the

marital relationship and equitably distribute marital assets and liabilities, as well as to address related issues such as alimony, child custody, and child support. *See generally* Fla. Stat. ch. 61.

The state court proceeding here is no different. It was not initiated by a "state actor," but rather by one private individual (B.M.S.'s mother) against another private individual (B.M.S.'s father). Doc 1-0 at 4–5, ¶¶ 19, 26; *see Sprint Commc'ns, Inc.*, 571 U.S. at 80 (finding no civil enforcement action because a private corporation initiated the action, not "the State in its sovereign capacity"). It was not initiated "to sanction the federal plaintiff" "for some wrongful act," nor could it be, as the federal plaintiff, B.M.S.,[1] was prevented from being a party to the proceeding altogether. Doc 1-0 at 9 ¶¶ 46–50; *see Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1079 (D. Alaska 2023) (declining to abstain under *Younger* where the minor children, not their parents, were the parties to the federal suit because "the absence of parties against whom criminal statutes would be enforced," *i.e.*, the parents of the federal plaintiffs,

[1] The federal plaintiff in this action is B.M.S.—not his mother. *See Dudley v. McCormick*, 799 So. 2d 436, 440 (Fla. Dist. Ct. App. 2001) ("The real party plaintiff in interest is the minor rather than his mother the nominal plaintiff." (quoting *City of Jacksonville v. Raulerson*, 415 So. 2d 1303, 1304 (Fla. Dist. Ct. App. 1982)) (alterations adopted)); *Buckner v. Fam. Servs. of Cent. Fla., Inc.*, 876 So. 2d 1285, 1286 (Fla. Dist. Ct. App. 2004); *see also Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1182 (S.D. Fla.), *aff'd sub nom. Gonzalez v. Reno*, 212 F.3d 1338 (11th Cir. 2000) ("A 'real party in interest' is the party in whose name a federal civil action 'shall be prosecuted.'" (quoting Fed. R. Civ. P. 17(a))).

"makes this suit fundamentally dissimilar from others that fall within the quasi-criminal category."). And there were no investigations "culminating in the filing of a formal complaint or charges," or any other similarities to a criminal action in any conceivable manner. *See Sprint Commc'ns, Inc.*, 571 U.S. at 79–80 (citing *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 624 (1986), and noting that *Dayton* featured a "preliminary investigation and complaint" by the State).

The district court's reliance on *Moore* only highlights its own error. The state court proceeding in *Moore* was not a dissolution of marriage action between two private individuals; it was termination of parental rights proceeding initiated by the State of Texas "to gain custody of children allegedly abused by their parents." *See Sprint Commc'ns, Inc.*, 571 U.S. at 79 (citing *Moore*, 442 U.S. at 415, 419–420); *see also Leonard*, 61 F.4th at 909 (discussing *Moore*). In other words, *Moore* involved each of the elements to a "civil enforcement proceeding" that are absent from the dissolution proceeding in this case: a termination of parental rights action initiated by the State; to sanction parents for the wrongful act of child abuse; involving investigations of child abuse "in aid of and closely related to criminal statutes" and culminating in the State's removal of the victims from their parents' custody. *See Moore*, 442 U.S. at 419–20, 423.

Even assuming *arguendo* that the state court dissolution proceeding could be shoehorned into one of *Younger*'s "exceptional" categories, abstention would still

be improper under the third *Middlesex* factor. Specifically, this factor requires "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432. But here, it does not.

Indeed, B.M.S. is not a party to the state court dissolution proceeding, and under Florida law, a non-party is a "stranger to the record" with no standing to assert claims or pursue appellate review. *See Edwards v. CIT Bank, N.A.*, 306 So. 3d 217, 219 (Fla. Dist. Ct. App. 2020) (quoting *Portfolio Invs. Corp. v. Deutsche Bank Nat'l Tr. Co.*, 81 So. 3d 534, 536 (Fla. Dist. Ct. App. 2012)). The state court also denied B.M.S. the appointment of an attorney *ad litem*, leaving him without any representative to advance his constitutional rights. Doc. 1 at 9 ¶ 50. Because B.M.S. cannot present or vindicate his independent First and Fourteenth Amendment claims in the state forum, the third *Middlesex* factor is unsatisfied, and *Younger* abstention cannot stand.

Because the district court miscategorized the state court dissolution of marriage action as a quasi-criminal civil enforcement proceeding, it applied *Younger* and its progeny in an unreasonable and incorrect manner. That misapplication constitutes an abuse of discretion requiring reversal. *See Klay*, 376 F.3d at 1096; *Jackson-Platts*, 727 F.3d at 1140 ("[W]here *Younger*'s prerequisites are not satisfied, federal courts must exercise their jurisdiction.").

## II. Judicial Immunity Does Not Bar Prospective Declaratory Relief Under § 1983.

In its Order Granting Defendant's Motion to Dismiss, the district court alternatively ruled that "[e]ven if the *Younger* abstention doctrine does not apply, Plaintiff's claim is nonetheless barred by the doctrine of judicial immunity and is therefore subject to dismissal with prejudice." Doc. 24 at 5; *but see Greening v. Moran*, 953 F.2d 301, 304 (7th Cir. 1992) ("[I]t is not appropriate to address the merits in a case to which *Younger* applies. *Younger* does not pave a one-way street in which defendants may prevail on the merits but cannot lose. . . . To say that abstention is in order then is to say that federal courts should not address the merits, period."); *accord Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006) ("When a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits"). In so doing, the district court reasoned that the 1996 amendment to § 1983 "restored judicial immunity for claims seeking declaratory or injunctive relief." Doc. 24 at 6. This statement of the law is not only belied by the plain text of § 1983—which limits claims only for injunctive relief, not declaratory relief—but it directly contradicts this Court's own language in *Bolin v. Story*, the precise Eleventh Circuit opinion relied upon for the district court's misreading of the statute. 225 F.3d 1234 (11th Cir. 2000).

"[I]n 1996, Congress enacted the Federal Courts Improvement Act ("FCIA"), Pub. L. No. 104–317, 110 Stat. 3847 (1996), in which it amended § 1983 to provide

that ‘injunctive relief shall not be granted’ in an action brought against ‘a judicial officer for an act or omission taken in such officer’s judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable.’” *Bolin*, 225 F.3d at 1242 (alteration adopted). Notably absent from the 1996 amendment is any mention that *declaratory* relief against a judicial officer was unavailable. *Id.* As this Court made clear in *Bolin*, “the 1996 amendment to § 1983 would limit the relief available to plaintiffs to declaratory relief.” *Id.*

For this reason, there is a “universal view [among] the federal courts, with sound basis, that the common law doctrine of judicial immunity has never foreclosed declaratory relief.” *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 110 (2021); *see Bolin*, 225 F.3d at 1242; *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam) (“[J]udicial immunity protects the Defendants only from Appellant’s request for injunctive relief. But § 1983 does not explicitly bar Appellant’s request for declarative relief.”); *Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) (“Common law judicial immunity . . . . does not preclude a court from granting declaratory . . . relief.”); *Severin v. Par. of Jefferson*, 357 F. App’x 601, 605 (5th Cir. 2009) (“[J]udicial immunity does not bar declaratory relief . . . .”); *Johnson v. McCuskey*, 72 F. App’x 475, 477 (7th Cir. 2003) (“[T]he amendment to § 1983 limits the type of relief available to plaintiffs who sue judges

to declaratory relief."); *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) (collecting cases).

Some circuits have specifically held that "declaratory relief is limited to *prospective* declaratory relief," as opposed to "purely retrospective" relief. *Just. Network Inc.*, 931 F.3d at 764; *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) ("The only type of relief available to a plaintiff who sues a judge is declaratory relief . . . . in anticipation of some future conduct, not simply to proclaim liability for a past act."); *LeDuc v. Tilley*, No. 3:05CV157MRK, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) ("The doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief."); *Davis v. Campbell*, No. 3:13-cv-0693 LEK/ATB, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014) ("The doctrine of judicial immunity also does not shield judges from claims for prospective declaratory relief."). Though this distinction is embodied by the *Ex parte Young* doctrine,[2] the Eleventh Circuit has nevertheless explained that "[d]eclaratory relief is by its nature prospective." *McGee v. Solic. Gen. of Richmond Cnty.*, 727 F.3d

[2] "The Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). "The Eleventh Amendment does not, however, bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law." *Id.* at 1552 (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

1322, 1325 (11th Cir. 2013); *Brinson v. Providence Cmty. Corr.*, 703 F. App'x 874, 876 (11th Cir. 2017).

In its Order Granting Defendant's Motion to Dismiss, the district court blurred the distinction between judicial immunity from damages and the separate governing law for declaratory relief under § 1983. The former concerns liability for *past* judicial acts; the latter governs *prospective* relief designed to prevent ongoing or future violations. By failing to recognize this doctrinal divide, the district court applied the wrong legal framework and erred as a matter of law.

Understanding the distinction is essential. Judicial immunity from damages is the general and virtually unyielding rule; it is only unavailable in those exceptional circumstances when a judge acts in the "clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin*, 225 F.3d at 1239). In these instances, district courts must determine whether: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Id.* (citing *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)).

Conversely, "to receive declaratory or injunctive relief" against a judicial officer under § 1983, a plaintiff "must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the

absence of an adequate remedy at law." *Sibley*, 437 F.3d at 1073 (quoting *Bolin*, 225 F.3d at 1242).

And under § 1983, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

In both its opinion and its analysis, the district court collapsed these distinct doctrines into one, extending judicial immunity beyond its proper bounds to bar B.M.S.'s sought prospective declaratory relief.

To wit, the district court first explained that "Defendant is entitled to judicial immunity" because "Defendant was carrying out routine judicial functions" and there were no allegations that "Defendant acted outside her judicial capacity or in 'clear absence of all jurisdiction.'" Doc. 24 at 6. But this analysis was misplaced, because Plaintiff-Appellant does not seek damages—only prospective declaratory relief. *See generally* Doc. 1-0.

Next, the district court set forth a misstatement of the law: "to obtain declaratory or injunctive relief against a judicial officer, a party must show that the judge either violated an existing declaratory order or that declaratory relief is otherwise unavailable." Doc. 24 at 6 (citing 42 U.S.C. § 1983). In doing so, the district court rewrote § 1983 to include "declaratory" relief and found Defendant-

Appellee immune because "Defendant did not violate any existing declaratory order, and Plaintiff has not alleged that declaratory relief is unavailable at the state level." Doc. 24 at 7.

The district court erred in both its legal framework and analysis. To begin, the only requirements B.M.S. had to establish for prospective declaratory relief were satisfaction of the three elements enunciated by *Bolin* and *Sibley*: (1) a violation; (2) irreparable injury; and (3) no adequate remedy at law. 225 F.3d at 1242; 437 F.3d at 1073; *but see* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").[3] Because

---

[3] In *Bolin*, this Circuit cited *Newman v. Alabama*, 683 F.2d 1312 (11th Cir. 1982), for the proposition that plaintiffs must make the three-part showing in order to obtain *both* declaratory and injunctive relief. 225 F.3d at 1242. However, a review of *Newman* makes clear that the word "declaratory" appears nowhere in its opinion. *See generally Newman v. Alabama*, 683 F.2d 1312 (11th Cir. 1982). Instead, the *Newman* Court set forth *only* the standard for permanent injunctions:

> To be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation. . . . He must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law. . . . If the plaintiff makes such a showing, the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation.

*Newman*, 683 F.2d at 1319 (citations omitted). Thus, the *Bolin* Court's addition of the word "declaratory" to these long-standing elements for injunctive relief appears to have been gratuitous, and in fact, one of these elements is in direct conflict with Rule 57. *See* Fed. R. Civ. P. 57. Respectfully, the undersigned posits that claims for

B.M.S. established each of these elements, the district court erred in dismissing the complaint due to judicial immunity, and its order should be reversed.

***a. B.M.S. established a violation.***

"To obtain relief under § 1983, [a plaintiff] must show that he was deprived of a federal right by a person acting under color of state law." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). Although the district court did not address this element, the allegations in the Complaint clearly establish a violation of B.M.S.'s constitutional rights.

It is "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (citing *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). The right to receive information and ideas "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution, in two senses." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982). "First, the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them . . . ." *Id.* And second, "the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom." *Id.*

---

prospective declaratory relief under § 1983 be analyzed only under the first two elements in line with Rule 57.

This right to receive information undoubtedly extends to minors. Indeed, "minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011) (quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 212–213 (1975)). "No doubt a State possesses legitimate power to protect children from harm . . . but that does not include a free-floating power to restrict the ideas to which children may be exposed." *Id.* (citing *Ginsberg v. New York*, 390 U.S. 629, 643 (1968); *Prince v. Massachusetts*, 321 U.S. 158, 165 (1944)).

In his Complaint, B.M.S. alleged Defendant-Appellee issued a no-contact order barring B.M.S.'s Mother from all contact and communication with B.M.S. Doc. 1-0, at 7 ¶ 38. B.M.S. further alleged the Defendant-Appellee's order barring his Mother from all communication with him "imposes an unconstitutional prior restraint on the Mother's speech, which in turn violates B.M.S.'s First Amendment right to receive information." Doc. 1-0, at 13 ¶ 71. The Complaint next alleged that because the no contact order "prohibits the flow of *all* information from the Mother to B.M.S.," it is "unconstitutionally overbroad because it restricts a substantial amount of the Mother's protected speech—speech that includes statements such as "I love you"—which in turn violates B.M.S.'s First Amendment right to receive information." *Id.* ¶¶ 14, 72. The Complaint further alleged that because the order

"prohibits the *indirect* flow of information from the Mother to B.M.S.," it is "unconstitutionally vague because it lacks clear definitions and precise boundaries," and "unconstitutionally overbroad because it restricts B.M.S. from receiving a substantial amount of his maternal family members' protected speech." *Id.* ¶¶ 73–74.

These allegations unquestionably state violations of B.M.S.'s First and Fourteenth Amendment rights to receive information. *See Brown*, 564 U.S. at 794–95. And accepting those allegations as true, as required at the motion-to-dismiss stage, *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010), B.M.S. adequately pleaded a constitutional violation sufficient to satisfy the first element for declaratory relief under § 1983.

**b. *B.M.S. established irreparable injury.***

It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "The rationale behind these decisions was that chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by money damages; in other words, plaintiffs would not be made whole." *Ne. Fla. Chapter of the Ass'n of Gen.*

*Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see Barrett*, 872 F.3d at 1229 ("An injury is 'irreparable' only if it cannot be undone through monetary damages." quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981)).[4]

Like the first element, irreparable injury went unmentioned by the district court. And like the first element, the Complaint's allegations satisfy the second element without question. In his Complaint, B.M.S. alleges he "[can't] take not talking [to] [his] mom"; he "miss[es] her"; and he "just keep[s] losing hope." Doc. 1-0, at 10 ¶ 54. Accordingly, each and every day B.M.S. continues to go without exercising his First Amendment right to receive information from his Mother "unquestionably constitutes irreparable injury." *KH Outdoor, LLC*, 458 F.3d at 1271–72 (quoting *Elrod*, 427 U.S. at 373); *cf. M.L.B. v. S.L.J.*, 519 U.S. 102, 119, (1996) ("[F]ew consequences of judicial action are so grave as the severance of natural family ties." (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982) (Rehnquist, J., dissenting))).

[4] Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

**c. *B.M.S. established no adequate remedy at law.***

The district court found that because "the constitutional claims have not been raised at trial or appealed to the Florida Supreme Court . . . an adequate remedy at law remains available." Doc. 24 at 7. This is wrong on the law and the facts.

*First*, the law. An adequate remedy "at law" means precisely that—a remedy at *law*, not in "equity." *See Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). A legal remedy must be one that can "compensate" for the injury, typically through "monetary damages." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Conversely, "the recovery of money damages do[es] not fall within the jurisdiction of equity." *Rosen*, 21 F.3d at 1527.

In that regard, where a plaintiff has suffered irreparable harm from chilled expression of speech, his remedies at law are *prima facie* inadequate. *See Barrett*, 872 F.3d at 1229 (11th Cir. 2017); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285 (explaining that "chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by monetary damages"). Because B.M.S. has suffered irreparable harm from the loss of his First and Fourteenth Amendment freedoms, *supra*, "his remedies at law [a]re inadequate." *Barrett*, 872 F.3d at 1229.

*Second*, the facts. The district court's finding that B.M.S. had an adequate remedy available through appeal or at trial is legally erroneous. To begin, that

reasoning presupposes that the mere ability of B.M.S. to raise constitutional issues at trial or on appeal constitutes a remedy at "law." It does not. Dissolution of marriage proceedings are not "legal" proceedings; they are equitable proceedings "in chancery." Fla. Stat. § 61.011.

Notwithstanding the equitable nature of the state court proceedings, and contrary to the district court's finding, B.M.S. had no ability to raise his constitutional claims "at trial." Doc. 1 at 9 ¶ 50. As set forth in the Complaint, B.M.S. was denied appointment of an attorney *ad litem* in the state court proceeding. Doc. 1-0, at 9 ¶¶ 47–51. Without an attorney *ad litem* to advocate his constitutional interests, B.M.S. is entirely unable to assert those claims in the state proceeding. *Id.* ¶ 50.

Likewise, B.M.S. lacks the ability to appeal. "Florida law clearly establishes that 'a non-party in the lower tribunal is a "stranger to the record" and, therefore, lacks standing to appeal an order entered by the lower tribunal.'" *Edwards*, 306 So. 3d at 219 (quoting *Portfolio Invs. Corp*, 81 So. 3d at 536); *see also Barnett v. Barnett*, 705 So. 2d 63, 64 (Fla. Dist. Ct. App. 1997) (explaining, in a dissolution of marriage appeal, that the Rules of Appellate Procedure define "appellant" as a "party" and thus a non-party bank "had no standing to appeal the adverse order"). Because B.M.S. is not a party to the state court dissolution of marriage proceeding, he has no standing to appeal. *Edwards*, 306 So. 3d at 219.

To conclude, the law is clear: the ongoing chilling of B.M.S.'s right to receive information "cannot be undone." *Barret*, 872 F.3d at 1229 (quoting *Deerfield Med. Ctr.*, 661 F.2d at 338). The right of B.M.S. to receive his Mother's words—words of "I love you," "I'm proud of you," and "I miss you," Doc. 1-0, 4 ¶ 14—"[can]not be compensated for by monetary damages," *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285, and it cannot be undone through the Mother's later words made at some unknown time in the future. *See* BENJAMIN FRANKLIN, POOR RICHARD'S ALMANAC (January 1748), *quoted in* JOHN BARTLETT, FAMILIAR QUOTATIONS 347 (Emily Morison Beck ed., 15th ed. 1980) ("Lost time is never found again."). Accordingly, B.M.S. has no adequate remedy at law.

Because B.M.S. established each of the elements required for prospective declaratory relief—a constitutional violation, irreparable injury, and no adequate remedy at law—the district court's contrary conclusion was legally erroneous and warrants reversal.

## CONCLUSION

For the foregoing reasons, the decision below should be reversed.

Dated: October 6, 2025

Respectfully submitted,

By: */s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
reid@reidlevinpllc.com
**REID LEVIN, PLLC**
P.O. Box 880682
Boca Raton, Florida 33488
Phone: (561) 866-6089

***Counsel for Plaintiff-Appellant B.M.S., a minor child, through his mother and next friend, Michelle Saenz***

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Eleventh Circuit Rule 32-4 because it contains 6,543 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6), as it was prepared in 14-point Times New Roman font.

By: */s/ Reid Levin*
Reid Levin, Esq.